IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK LEUTHOLD et al,                     No   C-03-1390 VRW

    Plaintiffs,                          ORDER

    v

DESTINATION AMERICA et al,

    Defendants.
_____/

        Plaintiffs are tour directors who allege that defendant tour operators did not make overtime payments required by the Fair Labor Standards Act ("FLSA") because defendants improperly classified plaintiffs as not covered by the FLSA. FAC (Doc #207) at 12. On August 16, 2004, the court granted plaintiffs' motion to certify a FLSA collective action under 29 USC § 216(b) ("§ 216(b)") against defendants for the limited purpose of providing notice to prospective class members. Doc #283. On May 20, 2005, the parties stipulated to a settlement agreement and release for the case. Doc #311. On May 25, 2005, the court preliminarily approved both the proposed settlement and a proposed plan to notify other FLSA class

members. Doc #317. The court also set deadlines for: (1) defendants to provide the claims administrator with the FLSA class members' last known mailing addresses (June 16, 2005); (2) the claims administrator, Gilardi & Co LLC, to mail the proposed notice to the FLSA class members (June 30, 2005); (3) FLSA class members to submit opt-in forms and other forms necessary to join the suit (August 29, 2005); and (4) objectors to file objections (August 29, 2005). Id.

The parties now jointly move for final approval of the proposed settlements. Final Settle Mot (Doc #320). Unopposed by defendants, plaintiffs also move for attorneys' fees and costs. Att Fee Mem (Doc #323). The court held a hearing on both of these motions on October 6, 2005. For the reasons stated below, the court GRANTS the parties' joint motion for final approval of the proposed settlement and GRANTS plaintiffs' motion for attorneys' fees and costs. This order will discuss each of these issues in turn. Because previous orders have already described the underlying facts in detail, this order will not rehash them.

I

The court first describes what types of settlements are permissible under § 216(b) and then examines how the law applies to the present case.

A

The FLSA provides a right of action to an employee against his employer when the employer fails to pay overtime wages. See 29 USC §§ 203, 207. Such an employee may also bring a collective action on behalf of similarly situated employees. Id §

2

216(b); see also <u>Doe v Advanced Textile Corp</u>, 214 F3d 1058, 1064 (9th Cir 2000); <u>Pfohl v Farmers Ins Group</u>, 2004 US Dist LEXIS 6447, *6 (CD Cal) (Tevrizian, J).  The district court may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit.  <u>Pfohl</u>, 2004 US Dist LEXIS 6447 at *6-*7 (citing <u>Advanced Textile Corp</u>, 214 F3d at 1064).  Potential plaintiffs must "opt-in" to the suit by filing a written consent with the court.  See § 216(b).  Should an employee not file a written consent, then he is not bound by the outcome of the collective action and may bring a subsequent private action.  <u>Pfohl</u>, 2004 US Dist LEXIS 6447 at *6 (citing <u>EEOC v Pan Am Work Airways, Inc</u>, 897 F2d 1499, 1508 n11 (9th Cir 1990)).  Employees who succeed under the FLSA are entitled to "wages lost and an additional equal amount as liquidated damages."  § 216(b).

The Supreme Court has indicated that "to allow waiver of statutory wages [granted under § 216(b)] by agreement would nullify the purposes of the [FLSA]."  <u>Brooklyn Savings Bank v O'Neil</u>, 324 US 697, 707 (1945); see also <u>Lynn's Food Stores, Inc v United States</u>, 679 F2d 1350, 1355 (11th Cir 1982).  Nonetheless, litigants can settle § 216(b) claims if they can show that their proposed settlement falls within one of two exceptions.  Under the first exception, which is created by 29 USC § 216(c), "an employee who accepts [a back wage] payment supervised by the Secretary [of Labor] thereby waives his right to bring suit for both the unpaid wages and for liquidated damages * * *."  <u>Lynn's Food Stores</u>, 679 F2d at 1353.  Under the second exception, "[w]hen employees bring a private action for back wages under the FLSA, and present to the

3

1   district court a proposed settlement, the district court may enter
2   a stipulated judgment after scrutinizing the settlement for
3   fairness."  Id.  This second exception permits a court to approve a
4   settlement, even if the employees receive less than what the FLSA
5   allegedly requires, if the settlement is a reasonable compromise
6   over a bona fide dispute and the employees have been fairly
7   advised.  See <u>Jarrard v Southeastern Shipbuilding Corp</u>, 163 F2d
8   960, 961 (5th Cir 1947).

9        A few courts have suggested that for § 216(b) collective
10  actions, courts could import the FRCP 23(e) class action settlement
11  analysis.  See <u>Garrett v Ernst & Young US LLP</u>, 2003 US Dist LEXIS
12  24869, *3-*4 (SDNY) (Hellerstein, J); cf <u>Woodall & Mutlu v The
13  Drake Hotel, Inc</u>, 913 F2d 447, 451-52 (7th Cir 1990).  Determining
14  whether settlements are proper under FRCP 23(e)(1)(C) requires
15  balancing at least eight factors.  See <u>Churchill Village v General
16  Electric</u>, 361 F3d 566, 575 (9th Cir 2004) (citing <u>Hanlon v Chrysler
17  Corp</u>, 150 F3d 1011, 1026 (9th Cir 1998)).

18       But a strict application of these factors to a § 216(b)
19  collective action is not appropriate.  There is no statutory
20  authority for applying the FRCP 23(e) factors to § 216(b)
21  collective actions.  Moreover, importing FRCP 23(e) analysis would
22  ignore a crucial difference between the two actions:  In a FRCP 23
23  class action, class members must <u>opt-out</u> to avoid being bound by
24  the judgment, but in a § 216(b) collective action, plaintiffs must
25  <u>opt-in</u> to become class members.  Because a § 216(b) collective
26  action only binds plaintiffs who affirmatively choose to join,
27  settlement of such a suit raises fewer concerns than a FRCP 23
28  class action settlement.  Accordingly, rather than rigidly applying

the FRCP 23 criteria, the court will review only whether a § 216(b) collective action settlement is fair to all parties.

B

Because this case involves a suit by employees against an employer for back wages under § 216(b), the proposed settlement falls within the second exception to the general rule barring FLSA settlements. Moreover, after scrutinizing the settlement, the court concludes that it is fair to all parties.

First, the settlement provides plaintiffs with an overtime payment based on 12.75 hours of labor for each tour day worked during the relevant time period. Final Settle Mot at 5. In their first amended complaint, plaintiffs alleged that they were on duty 24 hours a day for tours averaging over a week and that overtime was due for that entire period. FAC at 12:19-25. Although the stipulated overtime payment is less than what plaintiffs had initially sought, the court agrees that plaintiffs faced certain litigation risks that could justify the present settlement. For example, the parties disputed whether plaintiffs were employees that were subject to the FLSA or instead independent contractors or exempt employees. Final Settle Mot at 7. And, even if plaintiffs were non-exempt employees, the parties disagreed whether plaintiffs were entitled to compensation for 24 hours per day or instead only for periods when they were actively engaged in work. Id. Because plaintiffs could plausibly lose on these and other issues at trial, these risks justify the present settlement, which the court therefore deems reasonable.

The settlement also provides that if plaintiffs meet certain qualifications, they will receive cash payments of 72.5% of

5

the estimated employer matching contribution under defendants' 401(k) plan. Id at 6. The settlement assumes that defendants would have matched up to 2.5% of plaintiffs' salary, capped at a maximum of $2,000 per year. Id. The cash payments will also be adjusted for the historical performance of the 401(k) plan. Id. In total, the 401(k) settlement payment would give plaintiffs the greater of: (1) $2,000, or (2) 72.5% * 2.5% = 1.8125% of their salary, historically adjusted.

As with the overtime payments, the court recognizes that plaintiffs might have received a larger payout had they gone to trial. Nonetheless, the court believes that the settlement is quite generous to plaintiffs and is reasonable in light of the litigation risk that plaintiffs would otherwise face.

The settlement also requires plaintiffs to give up their rights to assert any federal or state law claims arising out of or related to their alleged misclassification as exempt employees and/or independent contractors. Id at 6-7. Such a release is reasonable and is a standard part of any settlement -- in exchange for providing a relatively generous payment, defendants seek assurance that they will not be sued again by the same plaintiffs on the same dispute. Moreover, because a § 216(b) settlement only binds plaintiffs who have opted-in, other eligible tour directors who have not joined this case may still sue on similar claims in the future.

Other miscellaneous factors also support the court's settlement approval. For example, defendants bear the burden of paying reasonable settlement administrative costs. Id at 7. The parties seem to have met the procedural requirements of the May 25,

6

2005, preliminary settlement approval order. The claims administrator sent timely notice to the 134 potential FLSA class members. Britt Terkaly Dec (Doc #321) at 2. For notices that were returned as undeliverable, the claims administrator re-sent the mail to new addresses that were found using the missing class members' social security numbers. Id at 2-3. And, importantly, no one seems to have filed a notice of objection to the proposed settlement. Final Settle Mot at 4:7-12.

Finally, an expert report completed by CPA Thomas Neches (Doc #312), on May 16, 2005, suggested that the 31 plaintiffs and opt-ins as of that date would receive slightly less than $1.5 million, which averages to a handsome individual payout of about $47,000. Id, Ex K. The claims administrator has since estimated that a total of 101 plaintiffs and opt-ins joined before the deadline of August 29, 2005; this suggests that the total payout will be approximately $4.5 million. Dacey Dec (Doc #324) at 7. In light of these considerations, the court GRANTS the parties' joint motion to approve the final settlement (Doc #320). The final settlement has been filed with the court as Doc #318.

II

The settlement also requires defendants to pay plaintiffs' counsel up to $550,000 in attorneys' fees and up to $17,000 in attorneys' costs. Final Settle Mot at 6. In an unopposed motion, plaintiffs' counsel have requested all $550,000 in fees and $16,407.30 in costs. Att Fee Mem at 1.

As a preliminary matter, the court notes that plaintiffs and their counsel do not get paid from the same fund. Put another

7

way, this case differs from so called "common fund" cases because plaintiffs and their counsel are not fighting a zero-sum battle over a fixed pot of money. In common fund cases, defendants who want to settle have an incentive to increase the attorneys' fee award -- at the expense of plaintiffs -- to induce plaintiffs' counsel to settle. But in cases like the present one, in which plaintiffs are paid a fair value separate from that paid to their counsel, defendants have no incentive to inflate attorneys' fees. Instead, a zero-sum battle is fought between plaintiffs' counsel and defendants, because every dollar that defendants pay in attorneys' fees in one less dollar that they keep. Hence, the court believes that in such circumstances, it is more likely that the adversarial process has prevented plaintiffs' counsel from negotiating exorbitant attorneys' fees.

Nonetheless, the court believes it is always good practice to use a lodestar calculation to cross check an attorneys-fee calculation. See generally In re HPL Technologies, Inc Securities Litigation, 366 F Supp 2d 912 (ND Cal 2005); Vaughn R Walker & Ben Horwich, The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings about "Reasonable Percentage" Fees in Common Fund Cases, 18 Georgetown J Legal Ethics 1453 (2005). This calculation appears to demonstrate that the above intuition was correct: Plaintiffs' counsel indeed have requested reasonable attorneys' fees.

Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante

1 risk of nonrecovery in the litigation). Plaintiffs' counsel have
2 provided a detailed breakdown of their billable time and their
3 billing rates. Dacey Dec, Ex 1 (Doc #325); Irion Dec (Doc #327),
4 Ex A. In performing this lodestar cross-check, the multiplier is
5 implied by the ratio of the attorneys' fee proposed by plaintiffs'
6 counsel to the computed lodestar fee.

7 The court first examines whether plaintiffs' counsel --
8 which billed for 1593.70 hours -- spent a reasonable amount of time
9 on the case. Att Fee Mem at 1. After reviewing the detailed
10 breakdown of the billable time, the court believes that plaintiffs'
11 counsel was reasonable in its hours billed. Plaintiffs' counsel
12 spent many hours on this suit because it involved many stages --
13 from defending against a motion to dismiss, through extensive
14 discovery, to the issue of class certification, to mediation, and
15 finally, to settlement negotiations. Presumably because of the
16 size and complexity of this case, plaintiffs' chief counsel --
17 Dacey & Sitkin -- requested that another firm, Capstone Law Group
18 LLP, work on discovery and strategy issues. Irion Dec at 2. Both
19 plaintiffs and defendants have served tens of document requests,
20 requests for admissions and interrogatories, and both parties took
21 a total of 14 depositions. Dacey Dec at 3. Given this case's size
22 and complexity and the ultimate favorable outcome for plaintiffs,
23 the court concludes that plaintiffs' counsel spent a reasonable
24 number of hours.

25 Next, the court determines a reasonable hourly rate for
26 plaintiffs' counsel. The court will simply use current (i e, 2005)
27 hourly rates; doing so simplifies the calculation and accounts for
28 the time value of money in that lead counsel has not been paid

**9**

contemporaneously with their work in this case. See <u>Vizcaino v Microsoft Corp</u>, 290 F3d 1043, 1051 (9th Cir 2002) (citing <u>Gates v Deukmejian</u>, 987 F2d 1392, 1406 (9th Cir 1992)) ("Calculating fees at prevailing rates to compensate for delay in receipt of payment was within the district court's discretion."). Of course, the annual rise in an attorney's billing rate reflects not only inflation but also the increased experience of the attorney, if different hourly rates are used (as the court does here) for lawyers of different experience and billing rates. But the inflationary effect should not usually grossly affect the lodestar calculation, unless the litigation is greatly prolonged, which is not the case here. At any rate, the relevant data are these:

| Attorney | Experience | 2005 Billing Rate (per hr) | Total Hours | Total Lodestar |
|---|---|---|---|---|
| <u>Dacey & Sitkin</u> | | | | |
| John J Dacey | 33 years | $400.00 | 690.50 | $276,200.00 |
| James M Sitkin | 23 years | $360.00 | 818.10 | $294,516.00 |
| Andrew Yale (paralegal) | | $80.00 | 11.70 | $936.00 |
| <u>Capstone Law Group LLP</u> | | $295.00 | 73.4 | $21,653.00 |
| Brian Irion | 20 years | | | |
| Mitchell Rosenfeld | 13 years | | | |
| | | Totals | 1593.7 | $593,305.00 |

The above figures are based on plaintiffs' attorneys' fee memorandum and declarations by plaintiffs' counsel. Att Fee Mem; Dacey Dec; Irion Dec. The court notes that even though plaintiffs'

10

counsel's calculation indicates that they are entitled to almost $600,000 dollars in attorneys' fees, they are only requesting $550,000. Id.

Although billing attorney time at a "blended" hourly rate may be appropriate for most lodestar cross-check computations, it is not appropriate here. As described earlier, this case involved complex issues concerning the scope of the FLSA and the nature of plaintiffs' employment. The court believes that plaintiffs received a favorable settlement in large part because plaintiffs' counsel used their expertise to successfully navigate these difficult issues. Applying a blended rate would ignore counsel's contribution and might deter counsel from taking these sorts of cases again in the future. Cf <u>Albion Pacific Property Resources, LLC v Seligman</u>, 329 F Supp 2d 1163, 1178 (ND Cal 2004) (holding, on a successful motion to remand, "plaintiff is entitled to an above-average hourly rate if it can demonstrate that its counsel were more efficient than reasonably competent counsel would have been" but that "[p]laintiff has made no such showing" and accordingly awarding "a reasonable attorney fee at an hourly rate of $190/hr for attorneys"). Accordingly, the court concludes that use of a blended hourly rate is a poor fit for this case.

But the court must find some objective source for setting counsel's hourly rates; the court cannot simply look at a lone out-of-context dollar figure and pronounce it "reasonable." Because the court has rejected the use of a blended rate here, another problem arises: The court will need a variety of rates to account for the various attorneys' different levels of experience. One well-established objective source for rates that vary by experience

11

is the Laffey matrix used in the District of Columbia.  See
http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_4.html (citing Laffey v Northwest Airlines, Inc, 572 F Supp 354 (D DC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984), cert denied, 472 US 1021 (1985)).

Under the 2005 Laffey matrix, attorneys with 20 or more years of experience bill $390/hour; attorneys with 11-19 years of experience bill $345/hour; and paralegals bill $110/hour.  These figures are, however, tailored for the District of Columbia, which has a somewhat lower cost of living than the San Francisco Bay area (in which lead counsel's firm operates); the court will adjust these figures accordingly.  The locality pay differentials within the federal courts -- which, like law firms, employ lawyers and legal support staff -- can approximate this difference.  See http://www.opm.gov/oca/05tables/pdf/salhr.pdf.  The Washington-Baltimore area has a +15.98% locality pay differential; the San Francisco-Oakland-San Jose area has a +26.39% locality pay differential.  Thus, adjusting the Laffey matrix figures upward by approximately 9% will yield rates appropriate for the Bay area.[1]

Applying this adjustment and rounding, the court obtains the following rates:  Attorneys with 20 or more years of experience bill $425/hour; attorneys with 11-19 years of experience bill $376/hour; and paralegals bill $120/hour.  Reproducing the table above, but substituting these values and recomputing the totals yields:

//

---

[1] (126.39 - 115.98) / 115.98 = 0.08976, or about 9%.

| Attorney | Experience | 2005 Billing Rate (per hr) | Total Hours | Total Lodestar |
|---|---|---|---|---|
| **Dacey & Sitkin** | | | | |
| John J Dacey | 33 years | $425.00 | 690.50 | $293,462.50 |
| James M Sitkin | 23 years | $425.00 | 818.10 | $347,692.50 |
| Andrew Yale (paralegal) | | $120.00 | 11.70 | $1404.00 |
| **Capstone Law Group LLP** | | $401.00 | 73.4 | $29,433.40 |
| Brian Irion | 20 years | | | |
| Mitchell Rosenfeld | 13 years | | | |
| | | Totals | 1593.7 | $671,992.40 |

Because Capstone Law Group, LLP, has one lawyer at the $425/hour rate and another lawyer at the $376/hour rate, the court averaged the two to reach a blended rate of $401/hour.

As this table demonstrates, plaintiffs' counsel have made a request that is reasonable in light of the standards applied generally in federal court. Even with a lodestar multiplier of one, counsel would be entitled to $671,992.40 under the <u>Laffey</u> calculation, substantially more than requested here. Accordingly, the court GRANTS plaintiffs' counsel an award of $550,000.00, to be paid by defendants.

As a final matter, plaintiffs' counsel has provided a detailed declaration of the expenses in this case, Dacey Dec, Ex 1, and their quite modest request for $16,407.30 makes it easy to conclude that counsel's expenses are reasonable. Because plaintiffs' counsel mentioned in the October 6, 2005, hearing that they may still incur some minor additional costs in this case, the

13

court GRANTS plaintiffs' counsel an award of $17,000.00, to be paid by defendants.

### III

In sum, the court GRANTS the parties' joint motion to approve the final settlement (Doc #320), and plaintiffs' counsel's unopposed motion for attorneys' fees and costs (Doc #323). Defendants must pay plaintiffs' counsel an award of $550,000.00 in attorneys' fees and $17,000.00 in attorneys' costs.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge